**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

SRI CLYDE COLLINS,

                              **Plaintiff,**

            **-v-**                                    **05-CV-0039Sr**

**GLENN S. GOORD**, *et al.*,

                              **Defendants.**

<u>**DECISION AND ORDER**</u>

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all proceedings in this case,

including the entry of final judgment.  Dkt. #20.

As limited by this Court's Decision and Order granting in part defendants'

motion to dismiss, plaintiff's *pro se* complaint alleges the following causes of action

pursuant to 42 U.S.C. § 1983 :

> 1.    refusal to permit plaintiff to work as a law
>        library clerk/paralegal, despite his qualification
>        to do so and assignment to that position,
>        because of racial discrimination against
>        defendant Warnes; and
>
> 2.    denial of outdoor recreation for a period of 45
>        days against defendants Murray, Nowicki and
>        Tarbell.

Dkt. #27.

Currently before the Court is plaintiff's motion for partial summary judgment (Dkt. #51), and defendants' motion for summary judgment.  Dkt. #52.  For the following reasons, plaintiff's motion is denied and defendants' motion is granted.

## BACKGROUND

Plaintiff was assigned to the law library as a clerk by the Program Assignment Committee following his transfer to the Gowanda Correctional Facility in January of 2004.  Dkt. #32-2, p.3 & Dkt. #53, pp.39-41.  C.O. Tomas Warnes declares that the decision as to which inmates work as clerks in the Law Library is made by the Program Committee and that he had no role in that decision in his capacity as Law Library Supervisor.  Dkt. #57, ¶ 6.  Plaintiff concedes that defendant Warnes is not a member of the Program Assignment Committee.  Dkt. #53, pp.39-40.

Approximately six months after his assignment to the Law Library, plaintiff got into an argument with a white clerk over misspellings and syntax in forms used by law clerks, causing an unidentified corrections officer who works when defendant Warnes was off to tell plaintiff to shut up.  Dkt. #53, pp. 46-48.  In response, plaintiff told the corrections officer, "No, you shut up."  Dkt. #53, p.48.  The unidentified corrections officer told plaintiff to leave the library and that "was the last time [plaintiff] worked as a paid clerk."  Dkt. #53, p.48.  At the time of his dismissal from the program as a clerk in the law library, plaintiff described the head clerk as "an older black gentleman" and identified the other 6-8 clerks as two white individuals and the rest Hispanic, including one black Hispanic.  Dkt. #53, pp.50-51.

Plaintiff approached C.O. Warnes and asked why he was removed while the white inmate was allowed to remain as a clerk.  Dkt. #53, p.49.  C.O. Warnes informed plaintiff that he had been removed because he talked back to the corrections officer.  Dkt. #53, p.49.  Plaintiff returned to the Program Assignment Committee and was assigned another program, but was allowed to return to the Law Library as a volunteer clerk.  Dkt. #53, p.50.  Plaintiff asked the Program Assignment Committee to return him to the law library, but his request was denied.  Dkt. #53, pp.52-53.  Plaintiff testified that the Program Assignment Committee informed him that his request was denied because he "can be a troublemaker."  Dkt. #53, p.53.  C.O. Warnes  declares that he had no role in plaintiff's removal as an inmate clerk at the Law Library.  Dkt. #57, ¶ 8.

On November 22, 2004, plaintiff wrote a letter to the mother of another inmate advising that he was "preparing" the inmate's "defense against the Department of Home [sic] Security's efforts to remove him due to his criminal conviction for what the DHS describes as an 'aggravated felony.'"  Dkt. #53, p.16.  Plaintiff signed the letter as a "Paralegal/Attorney's Assistant."  Dkt. #53, p.16.  On December 20, 2004, C.O. Kozak inspected mail addressed to the inmate, discovered the legal work prepared by plaintiff and determined that although plaintiff had requested permission to assist other inmates with their legal matters, he had failed to do so with respect to this inmate.  Dkt. #53, pp.9-14.  Plaintiff was charged in a misbehavior report with providing unauthorized legal assistance to another inmate and making false, incomplete and/or misleading statements.  Dkt. #53, p.7.

In his defense, plaintiff argued that the rule regarding inmates assisting inmates did not apply because he didn't assist the inmate, but simply requested the inmate's mother send in papers so that he could assess whether to assist the inmate. Dkt. #53, pp. 19-21.  With respect to his identification as a "Paralegal/Attorney's Assistant," plaintiff noted that he is trained as a paralegal and worked in that capacity prior to his incarceration.  Dkt. #32-2, pp.35-36 & Dkt. #53, p.21.  The C.H.O. found plaintiff guilty of the charges and suspended plaintiff's recreation, package, commissary, and phone privileges for 45 days commencing January 5, 2005.  Dkt. #53, p.28.

Gowanda is a medium security facility where inmates are housed in dormitories rather than cells.  Dkt. #54, ¶ 15.  Each housing unit at Gowanda consists of bunks for approximately 80 inmates along with a recreation room containing a television and tables for inmates to play cards or board games.  Dkt. #54, ¶ 15.  When inmates at Gowanda lose recreation privileges, they are forbidden to go into the recreation room, exercise yard or gym.  Dkt. #54, ¶ 16.  However, they continue to attend programs and religious services and can eat meals in the mess hall, visit the library and law library, and receive visitors.  Dkt. #54, ¶ 16.

Although the Department of Correctional Services' ("DOCS'") Directive 4009 permits inmates one hour of exercise per day, an inmate who has lost recreation privileges but who is not otherwise keep locked or confined to his or her cell need not be permitted one hour of exercise unless that inmate "has no program."   Dkt. #54,

¶ 11.  In other words, "an inmate on loss of recreation who does not have a program or visit on a weekend, holiday, or when day programs are closed, IS allowed one (1) hour of outdoor exercise in the yard."  Dkt. #53, ¶ 13.  In accordance with this policy, C.O. Nowicki declares that on any day during plaintiff's period of suspended recreation privileges that plaintiff was denied one hour of outdoor exercise, plaintiff left the housing unit, at a minimum, for program.  Dkt. #55, ¶ 14.


## DISCUSSION AND ANALYSIS

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).


A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

**Law Library Program Assignment**

   C.O. Warnes argues that he lacked personal involvement in the decision to remove plaintiff from his program assignment as a clerk in the law library.  Dkt. #52-1, p.8.

   "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009).  Thus, it is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983.  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989).

   In the instant case, plaintiff concedes that C.O. Warnes lacked any personal involvement in the decision to remove him from his program assignment as a clerk in the Law Library.  Plaintiff testified at his deposition that he was directed to leave the Law Library after he talked back to an unidentified corrections officer who works opposite shifts from C.O. Warnes and that the Program Assignment Committee, which did not include C.O. Warnes, denied his request to return to the Law Library and placed

him in another program instead.  Dkt. #53, pp.39-40, 46-48.  This comports with C.O.

Warnes' declaration that the Program Assignment Committee determines which

inmates work as clerks in the Law Library and that he had no role in plaintiff's removal

from that position.  Dkt. #57, ¶¶ 6 & 8.


Plaintiff's equal protection claim also falls on its merits.  "In order to plead

a facially valid equal protection claim . . . plaintiff must allege: (1) that he has been

treated differently from similarly-situated inmates, and (2) that the discrimination is

based upon a constitutionally impermissible basis, such as race . . . ." *Nash v.*

*McGinnis*, 585 F. Supp.2d 455, 462 (W.D.N.Y. 2008).  In the instant case, however, the

record demonstrates that plaintiff was removed from his program assignment in the

Law Library not because of his race, but because he challenged the unidentified

corrections officer's instructions to shut up by responding, "No, you shut up."  Dkt. #53,

pp.46-49.  The white clerk with whom plaintiff was arguing was not similarly situated to

plaintiff in that there is no indication that the white clerk challenged the unidentified

corrections officer's instructions.


**Denial of Outdoor Recreation**

Defendants argue that plaintiff was afforded meaningful exercise during

the 45 days in which he was denied recreation privileges and that the denial of outdoor

exercise for a period of no more than 45 days does not violate the Eighth Amendment.

Dkt. #52-1, pp.3-6.

Plaintiff argues that he is entitled to at least one hour of physical exercise, such as running and calisthenics in fresh air and sunshine, each day.  Dkt. #51, p.8.

In order to prove that a prison condition amounted to cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution, a plaintiff must satisfy both an objective and a subjective standard.  *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  To satisfy the objective test, a plaintiff must show that the conditions of confinement result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities."  *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985), *quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "However, conditions that are 'restrictive and even harsh' are 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Id., quoting Rhodes,* 452 U.S. at 347.  To satisfy the subjective test, a plaintiff must demonstrate that the defendants were "deliberately indifferent" to plaintiff's health or safety.  *Jolly*, 76 F.3d at 480.

The Court of Appeals for the Second Circuit recognizes that "some opportunity for exercise must be afforded to prisoners."  *Anderson*, 757 F.2d at 35.  Thus, "a prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial period of time."  *Davidson v. Coughlin*, 968 F. Supp. 121, 129 (S.D.N.Y. 1997).  When assessing whether a particular exercise deprivation falls below the objective requirements of the Eighth Amendment, courts should consider all of the relevant facts, including: (1) the

duration of the deprivation; (2) the extent of the deprivation – whether the deprivation was partial or complete; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation.  *Id.*

Applying these factors to the instant case, the Court concludes that plaintiff has failed to satisfy the objective component of the Eighth Amendment test. First and foremost, the Court emphasizes that plaintiff was not confined to a cell, but was permitted to walk within his 80-bed dormitory housing unit and to walk to and take advantage of programs, religious services, the mess hall, library and law library, and was allowed to receive visitors throughout the duration of his denial of recreation privileges, which did not exceed 45 days.  Dkt. #54, ¶ ¶ 14 & 16.  Moreover, plaintiff was allowed to participate in outdoor exercise on days when he did not have a program to attend or a visitor to see.  Dkt. #55, ¶ 13.  Finally, the loss of recreation privileges was imposed following a disciplinary hearing which determined that plaintiff provided unauthorized legal assistance to another inmate and made false, incomplete and/or misleading statements.  Dkt. #53, p.28.  Given the privileges remaining to plaintiff and the opportunity for movement and interaction with other inmates and outside visitors, the Court concludes that the denial of access to the outdoors for a period of no more than 45 days, as punishment for violation of prison rules, fails to rise to the level of a serious deprivation of a basic human need.

## CONCLUSION

Based on the foregoing, the plaintiff's motion (Dkt. #51), for partial summary judgment is denied and defendants' motion (Dkt. #52), for summary judgment is granted.


**SO ORDERED**.


DATED:   Buffalo, New York
         September 19, 2011


                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**